UNITED STATES DISTRICT COURT　　　　　　　　FOR ONLINE PUBLICATION
EASTERN DISTRICT OF NEW YORK　　　　　　　　ONLY
---------------------------------------------------------------X
JUNIOR A. MULRAIN,                              :
                                                :
                        Plaintiff,              :   MEMORANDUM
                                                :   AND ORDER
        - against -                             :
                                                :   09-CV-4793 (JG)
                                                :
MICHAEL J. ASTRUE,                              :
Commissioner of Social Security,                :
                                                :
                        Defendant.              :
---------------------------------------------------------------X

A P P E A R A N C E S:

    JUNIOR A. MULRAIN
        230 Lott Avenue, # 5-D
        Brooklyn, NY 11212
        Plaintiff, *pro se*

    BENTON J. CAMPBELL
        United States Attorney
        Eastern District of New York
        271 Cadman Plaza East
        Brooklyn, NY 11201
    By:   Karen T. Callahan
        Attorney for Defendant

JOHN GLEESON, United States District Judge:

        Junior Mulrain brings this action to challenge the decision of the Commissioner of Social Security that he is not disabled under the Social Security Act and therefore not entitled to disability benefits. Based on the administrative record, the Commissioner now moves for judgment on the pleadings affirming the decision. Oral argument was heard on April 27, 2010. For the reasons stated below, I grant the Commissioner's motion for judgment on the pleadings.

## BACKGROUND

A. *The Plaintiff's History*

Mulrain was born in 1971. He speaks English, and completed two years of college in 1996. He has had various jobs, with duties that include operating heavy machinery, working as a maintenance worker, and working as a warehouse supervisor for a printing company. At the administrative hearing on his claim for benefits, Mulrain testified that he was participating in a welfare program to assist him in finding jobs. Between March 2009 and June 2009, Mulrain worked for four hours a day moving supplies at a medical supply company, but had to stop working because the vehicle he used broke down. According to Mulrain, he liked that job and could do it. R. 35.[1]

Mulrain contends that he is disabled as a result of pain and muscle cramping caused by old injuries to right leg and foot. He states that he was involved in two work accidents, one in January 28, 1994 and another on June 20, 1998. Comp. 1. In one of these incidents, Mulrain accidentally shot himself in the leg with a nail gun. In the other, a heavy piece of metal fell on his foot, fracturing it in two places. R. 145. Mulrain's complaint also mentions a May 16, 2002 car accident. Comp. 1.

The medical evidence before the agency included reports from the Woodhull Medical and Mental Health Center, where Mulrain sought treatment for pain in his right ankle. Dr. Vujovic examined Mulrain in January 2008 and found limited movement of the ankle, but otherwise the findings were normal. In addition, an orthopedic evaluation by Dr. Louis Tranese, dated February 4, 2008, stated that Mulrain "may have mild limitations in ambulating extended

---

[1] Citations in the form "R. _" refer to the Administrative Record of the agency proceedings, filed with this Court on January 15, 2010.

distances and standing long periods," and "mild to moderate limitations for frequent stair climbing," but "no other physical functional deficits." R. 179.  An x-ray report dated the next day "demonstrate[d] no evidence of acute fracture, dislocation or destructive bony lesion." R. 180.  Further, Mulrain visited Montefiore Medical Center in August 2008.  There, Dr. Panozzo diagnosed arthritis in Mulrain's right ankle and foot.  R. 215.  Back at Woodhull in September 2008, Dr. Talluri diagnosed mild degenerative joint disease of the right foot and advised icing and elevating the foot.  R. 281.  At the administrative hearing, Mulrain testified that he could lift twenty-five to thirty pounds, that he could stand for forty-five minutes to an hour, that he could walk for about a mile and a half, and that he could sit for an hour and a half before feeling numbness in his foot.  R. 34-35.

The medical evidence before the agency also included reports from physicians who treated Mulrain for dizziness and headaches.  Mulrain was prescribed medications, including Nortriptyline, which Mulrain told doctors improved the headaches.

B.    *Procedural History*

On January 4, 2008, Mulrain applied for disability insurance benefits and Supplemental Security Income, claiming that he was disabled as of December 19, 2007 due to injuries to his right foot.  After his applications were denied, he requested a hearing before an Administrative Law Judge ("ALJ"), and the hearing commenced on July 1, 2009.  Mulrain testified at the hearing before ALJ Jane Polisar.  He stated that he was "not 100 percent," and that he was getting "severe headaches" and "dizziness," and that he was getting "headaches maybe twice a day."  R. 26.  Mulrain reported that the muscles in his foot often felt tense, but that when he rotated the foot – as directed by a doctor – it felt better.  R. 28.  In addition to Mulrain's testimony, the ALJ considered the medical records noted above.

3

ALJ Polisar issued a decision denying Mulrain's claims on July 21, 2009. Mulrain sought review of the ALJ's decision, but the Appeals Council denied that request on September 18, 2009. Mulrain filed this action on October 29, 2009.

DISCUSSION

In order to be found eligible for disability benefits, Mulrain needed to prove before the Commissioner that, "by reason of [a] medically determined physical or mental impairment ... which has lasted ... for a continuous period of not less than 12 months," 42 U.S.C. § 423(d)(1)(A), he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy ... ." 42 U.S.C. § 423(d)(2)(A).[2]

The Commissioner employs a five-step analysis in evaluating disability claims. *See DeChirico v. Callahan*, 134 F.3d 1177, 1179-80 (2d Cir. 1998); *see also* 20 C.F.R. § 404.1520 (2005). First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits his physical or mental ability to do basic work activities. If the claimant suffers from a severe impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has a listed impairment, the Commissioner will consider him disabled without considering vocational factors such as age, education, and work experience; the Commissioner presumes that a claimant who is afflicted with a "listed" impairment is unable to

---

[2] Substantial work activity is defined as work that involves doing significant physical or mental activity. 20 C.F.R. § 404.1572. Work can be considered substantial even if it is done on a part-time basis or if less money is earned or less responsibility is associated with it than with previous employment. *Id.* Activities such as household tasks, hobbies, therapy, school attendance, club activities, or social programs are generally not considered to be substantial gainful activity. *Id.*

4

perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth question is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform past work. Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work the claimant could perform. The claimant bears the burden of proof as to the first four steps, while the Commissioner must prove the final one. *See Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003).

ALJ Polisar followed the five-step procedure outlined above. R. 13-18. At the first step, she determined that Mulrain had not engaged in substantial gainful activity since December 19, 2007, and she found at the second step that Mulrai's ankle injury constituted a "severe impairment." But the ALJ held at step three that Mulrain's impairments did not meet one of the listed impairments in the regulations. At the fourth step, the ALJ concluded that Mulrain was unable to perform any past relevant work as a maintenance worker or warehouseman. Mulrain's claim fell at the fifth step of the analysis. There, the ALJ decided that Mulrain had the residual functional capacity to perform the full range of light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b). Accordingly, she determined that Mulrain was not disabled.

On review, the question presented is whether the Commissioner's decision that Mulrain is not entitled to disability benefits is supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (per curiam). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 31 (internal quotation

5

marks omitted). Applying that standard, I find that the ALJ reasonably concluded that Mulrain was not disabled.

Substantial evidence in the record supports the ALJ's conclusion that Mulrain was capable of light work. The medical evidence is consistent with Mulrain's statement that he was "not 100 percent," but that is not sufficient for a finding of disability. Though Mulrain continued to suffer pain in his right leg and foot – the stated basis for his benefits application – the severity of those symptoms was not such that it prevented Mulrain from doing any work that existed in the national economy. Both the medical evidence and Mulrain's own statements are consistent with the ALJ's conclusion. For example, the ALJ properly relied on Mulrain's testimony that, in 2009, he had capably worked a part-time job that, but for circumstances outside his control, might have become a full-time job. In addition, the ALJ reasonably found that Mulrain's headaches and dizziness, which Mulrain mentioned during the hearing, did not render him disabled, either standing alone or in combination with his other symptoms. Taking into account the claimant's age, education, and work experience, the ALJ's decision that Mulrain was not disabled during the relevant period is supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g).

In opposition to the Commissioner's motion for judgment on the pleadings, Mulrain submits new evidence that was not before the ALJ. The new evidence consists of reports by treating physicians at the Monetefiore Medical Center, where Mulrain has gone for treatment to his right foot. These reports diagnose Mulrain with "anterior ankle pain" (Dr. Pazzolo), "momentary … muscle cramps" (Dr. Levin), "leg cramps," (Dr. Kulsakdinun), and "chronic right leg cramps" (Dr. Levin), and "persistent pain" (Dr. Kulsakdinun). Some of these reports post-date the ALJ's decision, and none was submitted to the ALJ.

Where new evidence is submitted to the district court, the court may remand the case for the Commissioner to take new evidence "only upon a showing that there is new evidence which is material." 42 U.S.C. § 405(g). In this case, I conclude that remand to the Commissioner is unnecessary because the new evidence would make no difference to the ALJ's decision. *See Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988). None of the newly-submitted medical records cast doubt on the ALJ's conclusion that, although Mulrain suffered from foot pain and was therefore unable to do his past work as a warehouseman, he was nevertheless capable of working other jobs that would not have required him to walk and stand for long periods of time.

## CONCLUSION

For the reasons given above, defendant's motion for judgment on the pleadings is granted. The Clerk is respectfully directed to close the case.

So ordered.

John Gleeson, U.S.D.J.

Dated: April 29, 2010
Brooklyn, New York